[S. F. No. 10810.   In Bank.—June 27, 1924.]

## COUNTY OF FRESNO, Appellant, v. BRIX ESTATE COMPANY (a Corporation), Respondent.

[1] HORTICULTURE—ERADICATION OF PESTS—ACT OF 1917 (STATS. 1917, P. 627)—STATUTORY CONSTRUCTION.—It must be assumed that the legislature in providing in the act of 1917 (Stats. 1917, p. 627), which amended section 2322 et seq. of the Political Code so as to include squirrels and gophers in the list of pests to be eradicated by the county horticultural commissioner, that such act should in nowise affect any other acts relating to the destruction of ground-squirrels and was intended to provide the alternative method of proceedings for the extermination of ground-squirrels and gophers, and that it was discretionary with the governing bodies of counties or cities to proceed for such purpose under the provisions of this act or under the provisions of such other acts, had in mind the provisions of such earlier acts of legislation as were still in force, and particularly those provisions of the County Government Act (Stats. 1897, p. 465) investing boards of supervisors with the power to provide their own system and procedure for the eradication of insect and vegetable and animal pests, and it must be further assumed that it was the intention of the legislature, expressed in said act of 1917, to invest boards of supervisors with power to exercise their discretion as to whether they would continue to operate in the eradication of these animal and insect pests under their own procedure adopted under the provisions of the County Government Act, or to adopt and put in operation the procedure for the effectuation of such purpose provided by the act of 1917.

[2] ID.—ACT OF 1917—REFERENDUM—TIME.—The act of 1917 (Stats. 1917, p. 627), though passed by the legislature and approved by the Governor, was still inchoate and not certain of taking effect during the time the ninety-day period fixed by the referendum clause of the constitution, which provides that upon the presentation to the Secretary of State within ninety days after the final adjournment of the legislature of referendum petitions in the form and with the requisite signatures of qualified electors, the Secretary of State shall submit to the electors at the next succeeding general election such act and that "no such act or section or part of such act shall go into effect until and unless approved by a majority of the qualified electors voting thereon," was running.

[3] ID. — ACT OF 1917 — TIME — PREMATURE ACTION BY BOARD OF SUPERVISORS.—The action of a board of supervisors in undertaking to exercise the discretion to come within the provisions of the

act of 1917 (Stats. 1917, p. 627) when the ninety-day period fixed by the referendum clause of the constitution had not expired to make said act effective was premature, since at the time the board acted there was no certainty of the act going into effect.

(1) 2 C. J., p. 1006, sec. 55a (1926 Anno.).    (2) 36 Cyc., p. 1191. (3) 36 Cyc., p. 1191.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Affirmed.

The facts are stated in the opinion of the court.

George R. Lovejoy, District Attorney, and John R. Fitch, Chief Deputy District Attorney, for Appellant.

Williams & Fenstermacher for Respondent.

RICHARDS, J.—This appeal is from a judgment of the superior court of the county of Fresno rendered in favor of the defendant after an order sustaining its demurrer to the plaintiff's amended complaint, the latter having declined to further amend. The action was one brought by the county of Fresno to establish and enforce a lien against certain property of the defendant, based upon certain expenditures made by the county horticultural commissioner of said county in the course of the eradication of certain ground-squirrel pests with which the said lands of said defendant were infested, when said defendant had failed and neglected so to do, after notice requiring such action on its part had been given as required by the terms of the statute under which the said county official was purporting to act. The only question presented upon this appeal is as to whether the complaint sufficiently shows authority in said official to create and in said plaintiff to enforce said lien. In the year 1917 the state legislature passed an act purporting to amend section 2322 et seq. of the Political Code relating to the matter of the eradication of certain insect and animal pests injurious to trees and plants, providing for the appointment of a county horticultural commissioner in each of the several counties of the state and prescribing the powers and duties of such officials. (Stats. 1917, p. 627.) Prior to the enactment of this statute there had been various

legislative enactments relating to the prevention of infectious diseases affecting trees, plants, vegetables, vines, and fruits and the eradication of insect pests and noxious weeds also injuriously affecting these productive growths. The earliest of these acts was that adopted in 1881 (Stats. 1881, p. 86), providing for the appointment by boards of supervisors of county horticultural commissioners, three in number, to be known as a "County Board of Horticultural Commissioners," with powers to prevent and eradicate noxious diseases and insect pests from places where fruit trees and their products were grown and kept, to have any places infested with such diseases or pests declared to be public nuisances, to proceed with the abatement of the same, and to impose liens upon the land so infested for expenditures in the course of abating such nuisances and eradicating such pests. This act was amended in 1889 (Stats. 1889, p. 413) and also in 1891 (Stats. 1891, p. 268) in certain particulars, but in which amendments the main features of the original enactment above referred to were preserved. In 1897 these former acts were revised and substantially re-enacted in a new act repealing the former acts, but preserving in the main their features providing for boards of horticultural commissions, for the eradication of fruit, vine, and vegetable diseases and insect pests, and for the creation of liens for expenditures incurred in their eradication. (Stats. 1897, p. 244.) In the year 1907 the statute of 1897 above referred to was codified in the form of section 2322 et seq. of the Political Code, but without any material change in its phraseology, but in 1909 these sections of the Political Code were amended in certain material respects, chief among which was the provision substituting a single horticultural commissioner for the former board of three commissioners, and providing that such county commissioner should be appointed by the board of supervisors from a list of qualified persons certified as to their qualifications for such position by a state board of horticultural examiners to be appointed by the Governor under the terms of said act. This statute transferred to the county horticultural commissioner the powers formerly exercised by the county board of horticultural commissioners, including the power to eradicate fruit, vine, and vegetable insect pests and to create liens for the expense incurred therein, and for the foreclosure of such

liens in the name of the county. Thus far in the history of this particular line of legislation no provision had been made therein for the eradication of such animal pests as squirrels and gophers through the action of county horticultural commissioners, but in the year 1917 the foregoing sections of the Political Code were further amended so as to include these animals among the list of pests to be eradicated by the exercise of the powers conferred upon horticultural commissioners under the provisions of said act of 1917. The particular features of said act applicable to the instant case will be hereinafter adverted to. In the meantime another line of legislation had been enacted looking to the destruction of these particular animal pests. By a statute enacted in 1870 (Stats. 1869–70, p. 316) the destruction of ground-squirrels and gophers in certain counties of the state, including Fresno County, was provided for through a bounty law, the funds for which were to be provided by taxation and were to be expended in the payment of bounties to those killing or causing to be destroyed these animals. The succeeding legislature, however, amended this act so as to omit the county of Fresno from the list of counties in which it was to be in force, leaving it operative in certain other of the counties of the state. In the year 1897 this bounty law was superseded by the provisions of subdivision 26 of section 25 of the County Government Act (Stats. 1897, p. 465). By said subdivision of said section boards of supervisors of counties were empowered ''To provide for the destruction of gophers, squirrels, other wild animals, noxious weeds and insects injurious to fruit or fruit trees, or vines, or vegetable or plant life.'' The County Government Act embracing this provision was from time to time amended in other respects but not in respect to this subdivision thereof, and was finally and in 1907 codified into sections 4000 to 4325 of the Political Code, this particular subdivision being incorporated *in haec verba* into subdivision 26 of section 4041 of said code, where it still exists in its original form. It thus appears that when the statute of 1917 was enacted, and which by its terms added squirrels and gophers to the list of pests which might be eradicated through the exercise of the powers with which the horticultural commissioner was invested, the board of supervisors of Fresno County were already invested with power under

subdivision 26, section 4041 of the Political Code to adopt and enforce ordinances providing for the destruction of squirrels. In fact, it affirmatively appears upon the face of the complaint herein that the board of supervisors of Fresno County had already exercised the said powers with which it was thus invested by the adoption and putting in operation of a local county ordinance providing a system of extermination of ground-squirrels. It does not, however, appear from said complaint that the system thus adopted and put in operation by the county contemplated or provided for its enforcement through any action or exercise of authority on the part of the horticultural commissioner. On the contrary, the inference to be drawn from certain of the averments of said complaint is that it did not. In point of law such county ordinance could not so provide prior to the going into effect of the statute of 1917 for the reason that the statutes in existence prior to that time defined the powers and duties of the county horticultural commissioner, and these could not be either added to or taken away by a county ordinance. The act of 1917, as we have seen, re-enacted the provisions of sections 2322 and following of the Political Code in the form in which they had existed substantially since their amendment in 1909, with the exception of the incorporation therein of the provision adding ground-squirrels and gophers to the list of pests to be eradicated by the county horticultural commissioner under the terms of said act. It thus appears that while the office of county horticultural commissioner had been in being in the county of Fresno for a time several years prior to the year 1917, that official had never, prior to the taking effect of said act, been invested with power to eradicate squirrels under and by virtue of the provisions of sections 2322 and following of the Political Code. Having these conditions in mind we may now turn to the particular provisions of the act of 1917 relating to the facts of the instant case as they appear upon the face of plaintiff's amended complaint. The act of 1917 contained the following provision:

"This act shall in nowise affect any other act or acts providing for the destruction of ground-squirrels or applying to the proceedings thereunder, but is intended to and does provide the alternative method of proceedings for the extermination of ground-squirrels and gophers referred to in

this act; and it shall be within the discretion of the governing body of each county, city and county, city or town herein mentioned to provide for the destruction of groundsquirrels whether under the provisions of this act or under the provisions of such other act or acts."

[1] It must be assumed that the legislature in thus providing had in mind the provisions of such earlier acts of legislation as were still in force, and particularly those provisions of the County Government Act above referred to investing boards of supervisors with the power to provide their own system and procedure for the eradication of insect and vegetable and animal pests, and that it was the intention of the legislature, expressed in the foregoing provisions in said act of 1917, to invest boards of supervisors with power to exercise their discretion as to whether they would continue to operate in the eradication of these animal and insect pests under their own procedure adopted under the provisions of the County Government Act, or to adopt and put in operation the procedure for the effectuation of such purpose provided by the act of 1917.

This assumption leads us to the crucial situation presented by the plaintiff's amended pleading in the instant case. The act of 1917 was passed by the legislature on April 27, 1917, and was approved by the Governor on May 17, 1917. The final adjournment of the session of the legislature of 1917 occurred on said April 27, 1917. The amendment to section 1 of article IV of the state constitution adopted in 1911, and known as the "Initiative and Referendum" amendment thereto, provides that "No act passed by the legislature shall go into effect until ninety days after the final adjournment of the session of the legislature which passed such act." The amendment further provides that upon the presentation to the Secretary of State within ninety days after the final adjournment of the legislature of referendum petitions in the form and with the requisite signatures of qualified electors, the Secretary of State shall submit to the electors at the next succeeding general election such act and that "no such act or section or part of such act shall go into effect until and unless approved by a majority of the qualified electors voting thereon." Under and by virtue of the terms of the foregoing amendment to the constitution the act of 1917 was not to go into effect until

July 27, 1917. On July 10, 1917, the board of supervisors of the county of Fresno adopted the following resolution:

''The 1917 legislature having passed a law authorizing the extermination of squirrels by the County Horticultural Commissioner and this Board having already in operation a system of extermination under a local county ordinance and it appearing that it would be to the best interest of all concerned for this county to avail itself of the State law authorizing such work to be done by the Horticultural Commissioner:

''Now Therefore, it is by this Board ordered that the matter of exterminating squirrels within the county of Fresno be and the same is hereby turned over to the Horticultural Commissioner of this county from and after the 26th day of July, 1917.''

It would seem to be clear from our foregoing review of the legislation providing for the eradication of animal pests that the power of the board of supervisors of Fresno County to provide for the destruction of ground-squirrels and gophers and for the creation of liens for the expenditures incurred therein under and in accordance with the act of 1917 did not and could not come into being until such time as the said act of 1917 itself went into effect. It is argued quite plausibly by the appellant herein that the board of supervisors under the broad powers granted to that body by the terms of subdivision 26 of section 4041 of the Political Code possessed the power to anticipate the going into effect of said act, since it was certain of going into effect upon July 27, 1917, the date upon which the resolution of the board of supervisors was itself and by its express terms to take effect. The authorities cited by the appellant and which are *People* v. *Blanding*, 63 Cal. 333, *State of Nevada* v. *Irwin*, 5 Nev. 111, *People ex rel. Graham* v. *Inglis*, 161 Ill. 256 [43 N. E. 1103], and *Dunbar* v. *Cronin*, 18 Ariz. 583 [164 Pac. 452], would seem to support its contention, provided its premise were conceded to be correct, viz., that the act of the legislature having so far proceeded in the course of its passage and approval as to be certain of taking effect upon a particular date, the board of supervisors might anticipate that certainty by the adoption of a resolution to come within its terms, which resolution would go into effect contemporaneously with the act itself. But in the instant

case this premise is not correct. **[2]** The act in question, though passed by the legislature and approved by the Governor, had not yet reached or passed the point of time when it would be certain of taking effect. It was still inchoate and prevented of taking present effect by the provisions of the referendum clause in the constitution, and was further subject to be delayed in taking effect and even of being defeated altogether by the presentation of a referendum petition and by an adverse election. **[3]** There was, therefore, no certainty of going into effect of this act at the time the board of supervisors undertook to exercise the discretion to come within its provisions which said board could only exercise when said act had become effective or when, under the cases relied upon by the appellant, it was certain to thus become effective. Such being the state of uncertainty as to when, if ever, this act was to become effective, we can find no escape from the direct application of the cases of *Harrison* v. *Colgan,* 148 Cal. 69–77 [82 Pac. 674], and *Santa Cruz Water Co.* v. *Kron,* 74 Cal. 222 [15 Pac. 772], to the status of this case as presented by the plaintiff's amended complaint. Even if it be conceded for the sake of argument that the board of supervisors of the county of Fresno were not required by the terms of the statute of 1917 to adopt any formal resolution declaring an intention to proceed thereafter in the matter of the eradication of squirrels under the provisions of said act, but that said board might manifest such determination by any other form of acquiescence in its provisions, the amended complaint herein is utterly silent as to any other formal or informal action being taken by said board other than that expressly pleaded therein and which, as we have seen, was premature. It follows that no sufficient foundation was laid in the plaintiff's pleading for the imposition of the lien which is sought therein to be established and enforced. The demurrer to said complaint was therefore properly sustained.

Judgment affirmed.

Lennon, J., Shenk, J., Seawell, J., Lawlor, J., Waste, J., and Myers, C. J., concurred.