[Sac. No. 4850. In Bank.—December 28, 1934.]

HARRY W. HALL, Petitioner, v. L. P. WILLIAMS, as County Auditor, etc., Respondent.

[Sac. No. 4851. In Bank.—December 28, 1934.]

EDWARD T. RYAN, Petitioner, v. L. P. WILLIAMS, as County Auditor, etc., Respondent.

[Sac. No. 4852. In Bank.—December 28, 1934.]

CHARLES A. ROOT, Petitioner, v. L. P. WILLIAMS, as County Auditor, etc., Respondent.

[Sac. No. 4853. In Bank.—December 28, 1934.]

FRANK P. CHRISTOPHEL, Petitioner, v. L. P. WILLIAMS, as County Auditor, etc., Respondent.

[Sac. No. 4854. In Bank.—December 28, 1934.]

R. E. GOLWAY, Petitioner, v. L. P. WILLIAMS, as County Auditor, etc., Respondent.

Archibald D. McDougall, Bronson, Bronson & Slaven and W. H. Hatfield for Petitioners.

Neil R. McAllister, District Attorney, and Gordon S. Hughes, Deputy District Attorney, for Respondent.

THE COURT.—The above-entitled cases all involve identical questions of law, and were consolidated and argued together. They are therefore herein considered together. The petitioner in each case sought a writ of mandate to compel respondent, as auditor of the county of Sacramento, to draw a warrant in his favor as compensation for services, under sections 4236a, 4236f, 4236c, 4236e and 4236j of the Political Code. Petitioner Hall is the county clerk of said county; petitioner Ryan is the tax collector; petitioner Root is the recorder; petitioner Christophel is the treasurer; and petitioner Golway is the superintendent of schools. Respondent auditor refused to draw the warrants as demanded, contending that petitioners were entitled only to such salaries as had been fixed by the board of supervisors.

Petitioners were elected to their respective offices in August, 1930, for terms of four years.. At the time of their election, their compensation, fixed by Political Code, sections 4236a et seq., was $4,000 per year. The legislature in 1933 amended these sections to reduce the salaries to $3,600 per year, and petitioners concede the validity of these amendments, and demand the compensation thus specified. However, in April, 1933, the voters of the county adopted

a new charter, which was approved by the legislature in May, and by its terms went into effect July 1, 1933. Thereafter the board of supervisors of the county fixed the salaries of petitioners at $250 per month, by ordinance effective August 16, 1933. It is this action which petitioners attack, claiming that the board lacked power under the charter to make the change applicable to them.

Section 15 (b) of the charter gives the board power to provide by ordinance for "the compensation of elective and appointive officers", unless such compensation is otherwise fixed by the charter, provided that the compensation of elective officers shall be fixed at least six months prior to the election of such officers. Section 34 provides that the compensation of elective officers shall be fixed by ordinance of the board, and specifies the maximum compensation. Section 35 makes the same provision as to the compensation of appointive officers. However, the elective officers listed in section 34 do not include petitioners. Their offices, formerly elective, are now appointive, and are listed in section 35, and under the provisions of that section, the board of supervisors has the power to fix the salaries of the persons holding such offices. There is nothing in the charter to indicate that petitioners are excluded from the operation of a section which expressly applies to their offices, merely because they were chosen for the offices by election, whereas future holders of the same offices will be appointed. They might object, it is true, to cutting down their terms, but the charter expressly protects their tenure. Section 28 provides: "All county officers holding offices which were elective immediately prior to the time this charter takes effect shall continue to hold their respective offices until the expiration of their present terms, unless sooner removed in the manner provided by law. The terms of all other county officers shall expire upon the taking effect of this charter, provided, however, that each shall continue to hold office until his successor has been appointed and has qualified." Here we have a clear recognition by the framers of the charter that certain offices are no longer elective, and provision is made for safeguarding the tenure of the incumbents. But the charter just as clearly avoids any language which might be construed to safeguard their salaries. It follows that the framers of the charter, well aware of the problem

presented by elected incumbents in offices now appointive, nevertheless concluded that their salaries should be subject to the determination of the board.

It may be pointed out, however, that even if petitioners were correct in their contention that the charter provisions do not apply to them, and that their salaries should be determined in accordance with the general law, they would have no better case. Section 4056d of the Political Code, as amended in 1933, provides that the board of supervisors of each county "shall have the power and it shall be the duty of such board to regulate the compensation of all county . . . officers" (with certain exceptions not applicable here). The section further provides that "all laws or parts of laws now in force establishing, regulating or otherwise affecting the salaries or compensation of county officers" (excepting those not covered by the section) "are hereby continued in force and effect solely as ordinances of the respective counties to which they relate, and may be superseded, modified or otherwise affected by ordinances hereafter adopted in the respective counties . . . " The California Constitution, article XI, section 5, as amended in 1933, provides that the boards of supervisors in the respective counties "shall regulate the compensation of all officers in said counties" (with exceptions not applicable here), and referring to section 4056d of the Political Code, declares that said section "is hereby validated and made fully and completely effective". Petitioners are unmistakably within the terms of the above constitutional and statutory provisions. Sections 4236a et seq. of the Political Code, upon which they rely, are clearly "laws now in force" which may be "superseded, modified or otherwise affected by ordinances", as stated in section 4056d of the Political Code, *supra*. The board of supervisors has by ordinance superseded the compensation provisions of the general law, and the schedule thus fixed is the measure of petitioners' claims. The legislative power to reduce the salary of such an incumbent elective or appointive county officer is unquestioned.

The applications for writs of mandate are denied.

Rehearing denied.