In the Matter of the Application of LEWIS A. ABRAMS and Fifty-two Others, as Set Forth in the Petition Herein, Petitioners, for an Order against FIORELLO H. LAGUARDIA, as Mayor of the City of New York, and Others, Respondents.

Supreme Court, Special Term, New York County, June 25, 1940.

*Gabriel L. Kaplan* and *Sidney A. Fine* [*Elliott B. Paley* of counsel], for the petitioners.

*William C. Chanler, Corporation Counsel* [*Frederick P. Bryan, Robert H. Schaffer* and *Louis M. Weintraub* of counsel], for the respondents.

HOFSTADTER, J.   The petitioners, who are justices of the Municipal Court of the City of New York, bring this proceeding, pursuant to article 78 of the Civil Practice Act, on the ground that since July 1, 1937, they have been receiving under protest a salary less than that to which the law entitles them.

The facts are not subject to dispute.   In 1927, some few days after the court in *Schieffelin* v. *Leary* (219 App. Div. 660) had held that neither the board of estimate and apportionment nor the board of aldermen had the power to change existing salaries of Municipal Court justices, the Legislature passed a bill to remedy this situation.

The critical legal problem here involved is the proper construction of this statute (Laws of 1927, chap. 506), which provides as follows:

" 1. Notwithstanding the provisions of the city home rule law or any other statute, the board of estimate and apportionment of the city of New York is hereby authorized to fix the salaries and compensation of the justices of the Municipal Court of the City of New York and of the clerks of such court; and the action of such board in fixing such salaries and compensation, from time to time, shall supersede the provisions of any statute fixing such salaries or compensation.   *   *   *

" 3. Salaries or compensation at any time fixed pursuant to this act may be made by such board to apply to the justices and clerks then in office."

Shortly after the passage of this law, the board of estimate increased the salaries of the justices to $12,000 a year.   Commencing with the budget for the year 1933, the compensation has been fixed in a lesser amount.   It is conceded for the purposes of this proceeding that the decreases during the years 1933 to 1936 were authorized by the Economy Act of 1932 (Laws of 1932, chap. 637. See *Haggerty* v. *City of New York*, 267 N. Y. 252), but it is urged that upon the repeal of the emergency legislation in 1937, the action of the board of estimate became improper, as the statute under which the board purported to act did not confer upon the city of New York the power to *reduce* the salaries of the justices but only the power to increase them.

The Municipal Court is not a constitutional court and accordingly the salaries of its justices may be reduced during their term

of office by appropriate legislative action. (*Haggerty* v. *City of New York, supra.*) That the power admittedly residing in the Legislature has been effectively delegated to the city of New York by the cited statute is manifest from its terms.

There is nothing in its language, which authorizes the board of estimate " to fix the salaries and compensation of the justices of the Municipal Court," to compel the conclusion that it was intended that only a limited power was in fact conferred. It has been uniformly held in construing similar phraseology in statutes that the power to " fix salaries " implies a plenary right to act, free from any judicial or administrative interference. (*Matter of Rosenthal* v. *McGoldrick*, 279 N. Y. 688; *Matter of Wingate* v. *McGoldrick*, Id. 246; *Matter of Hetherington* v. *McGoldrick*, Id. 687; *Matter of McCarthy* v. *LaGuardia*, 172 Misc. 260; affd., 259 App. Div. 710.)

The proper construction of the statute in question is indicated by these decisions. In the absence of an *express* limitation, the grant of the power to " fix " salaries and compensation carries with it, by necessary implication, the right to lower as well as increase such compensation. Where a statute is clear and unambiguous on its face there is no room for a strained construction based on speculation as to what the Legislature may have intended. (*Matter of Baerenklau* v. *Thatcher*, 269 N. Y. 494, 499–500.) While it may be true that the motivation for the passage of the statute in 1927 was a desire to permit the city of New York to increase the salary of its Municipal Court justices, it does not follow that the power thus conferred was by intention limited solely to such action. Indeed, it is illogical to conclude that the Legislature divested itself of the right to increase salaries, but retained to itself the co-ordinate power to decrease them. Orderly procedure would require that both these powers be exercised by the same legislative body.

Accordingly, it must be held that the board of estimate was empowered to fix the salaries of the petitioners in the amounts stated in the budgets during the periods in suit.

The further contention that the power, in any event, was not properly exercised is untenable. The intention of the board is clear and the passage of a resolution adopting a budget which specifically sets forth the compensation to be received for the ensuing budgetary period is equivalent to a legislative act of fixing the salaries in the exercise of the power granted by the governing statute.

In addition to the resolution adopting the budgets, the board of estimate also passed specific supplementary resolutions at the

same time to the effect that the salaries in "boards, offices and departments of the city or county government" are fixed at the rates appearing in the budgets. While a supplementary resolution would seem to be unnecessary to effectuate the power conferred by the statute, in any event, the resolutions in the form adopted are sufficiently broad to comprehend the compensation *actually* fixed in the budget, pursuant to law, for these petitioners. It is not persuasive that, for other purposes, justices of the Municipal Court are in the category of State officers as the intent to include them within the terms of the resolution is manifest. In *Matter of Daly* v. *McGoldrick* (280 N. Y. 210) it was held that the surrogate of Richmond county was restrained by the provisions of a law applying to the head of a "department, board, bureau or office" of the county or city government. It is apparent that the court may not adopt a highly technical construction which is in opposition to a clearly expressed legislative purpose.

The law itself provides no particular form of procedure, and "all that is necessary is that the recommendation be specific and the action thereon clearly indicated." (*People ex rel. Tyng* v. *Prendergast*, 164 N. Y. Supp. 1042, 1048; affd., 221 N. Y. 659. See, also, *Lazinsk* v. *City of New York*, 163 App. Div. 423, 433.) This requirement is fully established by the record.

In view of the time which has elapsed since the motion was originally brought on for hearing, it is deemed appropriate to state that the apparent delay was occasioned solely by the time accorded the parties to submit memoranda of law and to act on a suggestion by the court, that the matter be submitted, in the first instance, to the Appellate Division on an agreed statement. Argument on the motion was had, after failure of counsel so to agree, on May thirty-first.

Motion denied and petition dismissed. Settle order on one day's notice.