GEORGE C. McKANN, Jr., PROSECUTOR, v. TOWN OF IRVINGTON AND EDWARD D. BALENTINE, DIRECTOR OF PUBLIC SAFETY, ANDREW COLEMAN AND AUGUST WALTERS, RESPONDENTS.

Argued January 16, 1945—Decided May 15, 1945.

Before Justices PARKER and COLIE.

For the prosecutor, *Riker, Marsh & Shipman* (*Irving Riker*, of counsel).

For the respondents Town of Irvington and Balentine, *John J. Gaffey* (*Herman W. Kurtz*, of counsel).

For the respondents Coleman and Walters, *Charles E. McCraith, Jr.*

The opinion of the court was delivered by

COLIE, J.    Prosecutor was allowed a writ of *certiorari* to review the legality of the action of respondent Edward D.

Balentine, Director of Public Safety of the Town of Irvington, in ordering increases in salary to members of the police and fire departments.

The Town of Irvington is under the commission form of government and in accordance with the statutory mandate the executive, administrative, judicial and legislative powers, authorities and duties were distributed among the five departments. The Department of Public Safety was assigned to respondent Balentine, and that assignment included the police and fire departments.

In 1937 Irvington adopted the provisions of the Civil Service Act and the following year the Civil Service Commission in accordance with the provisions of *R. S.* 11:24–1 prepared classifications and suggested standards of salaries or wages to be paid officers and employees in the classified service of the municipalities. These recommendations, which cover forty-two printed pages of the state of case, were forwarded by the Civil Service Commission to the town.

In 1939 Irvington adopted an ordinance hereinafter referred to as Ordinance No. 1517, which reads, in part:

"An Ordinance Concerning Officers and Employees of the Town of Irvington, Essex County, New Jersey, under the Provisions of the Civil Service Act of the State of New Jersey and Adopting Appropriate Titles, Salaries and Salary Ranges Therefor, and Setting up the Respective Duties, Typical Tasks, and the Minimum Qualifications, and Probable Line of Promotion for Each of Said Offices, Positions and Employments.

"The Board of Commissioners of the Town of Irvington, in the County of Essex Do Ordain as follows:

"SECTION 1.

"Schedules.

"The schedules referred to herein and recommended to this body for adoption, by the Civil Service Commission of the State of New Jersey, consisting of the following, together with all resolutions by the Board of Commissioners approved by the Civil Service Commission changing said schedules, are hereby made part of this ordinance in their entirety the

same as though specifically set forth herein, said schedules and resolutions being filed with the Town Clerk coincident with the passing of this ordinance."

The schedules above referred to were filed with the town clerk and remained open to public examination.

In 1941 the granting of increased salaries to the fire and police departments was submitted to the legal voters at a referendum and decisively defeated. Thus the matter stood until October 26th, 1944, when Commissioner Balentine wrote the town clerk that "in pursuance of ordinance numers 1291 and 1292 as adopted in civil service ordinance number 1517 in which the salary ranges are set up, I, as Director of Public Safety, do notify you as follows: I am listing with you the new salary schedules to be paid the present members of the Police and Fire Departments, commencing November 1st, 1944, to be paid in equal semi-monthly installments." Then followed a new schedule of salaries. On November 18th, 1944, a second letter was written to the town clerk. It reads:

"By virtue of my office as Director of Public Safety of the Town of Irvington, and the provisions of the statutes of the State of New Jersey in such case made and provided, particularly *R. S.* 40:72–2, and in pursuance of an ordinance adopted by the Town of Irvington on June 27th, 1939, entitled 'An Ordinance concerning officers and employees of the Town of Irvington, Essex County, New Jersey, under the provisions of the Civil Service Act of the State of New Jersey and adopting appropriate titles, salaries and salary ranges therefor, and setting up the respective duties, typical tasks, and the minimum qualifications and probable line of promotion for each of said offices, positions and employments' (being Ordinance No. 1517), you are hereby notified that effective November 1st, 1944, I am granting increases to members of the Police and Fire Departments as shown on Schedule A attached hereto and made a part hereof. Said increases are within the minimum and maximum salary ranges established by said ordinance set out above and in accordance with the terms thereof.

"Except as provided or shown on said Schedule A the bonus payments are discontinued upon the taking effect of said increases.

"My letter to you of October 26th, 1944, is to be disregarded in its entirety and this letter substituted in its place because of the fact that upon a subsequent scrutiny of that letter I have discovered a few inadvertent increases, which I hasten to correct.

"I am sending a similar letter to Civil Service Commission for the information of that body.

Respectfully yours,<br>
Edward D. Balentine,<br>
Director of Public Safety."

. The legal sufficiency of the letters of October 26th and November 18th, 1944, to effectuate the salary increases comprehended thereby is now under attack.

Prosecutor's first argument is addressed to the point that the Director of Public Safety has no power "to change" salaries since that power can be exercised solely by the Board of Commissioners and then only by ordinance. Under *R. S.* 40:72–4 it is mandatory that the various powers be distributed among the several departments. It has also been long since judicially settled that after the powers have been distributed, they no longer reside in the commission as a whole but are possessed by the director of the department within whose province the particular power logically belongs. *Foley* v. *City of Orange,* 91 *N. J. L.* 554. In the instant case ordinance No. 1517 set up salary ranges and it is urged as a ground for setting aside the action of Commissioner Balentine that the ordinance is defective since it does not comply with *R. S.* 40:73–6 to the effect that "The salary or compensation of all officers and employees * * * shall be fixed by the board of commissioners." It is stipulated that the ordinance was duly passed by the commission but prosecutor contends that it is defective since it does not "fix" the salaries. It is said that the establishing of a salary schedule with a minimum and maximum range is not in compliance with the legislative direction but that the proper

construction to be put upon the mandate that "the salary or compensation * * * shall be fixed" requires that the verb "fix" be accorded the narrow meaning of "to decide definitely; make sure; settle or determine." We think it of significance that one of the established meanings of "to fix" is "to adjust" or "to regulate." An instance of judicial interpretation along the latter line is *Buckbee* v. *Board of Education,* 100 *N. Y. S.* 943; *affirmed,* 187 *N. Y.* 544, in which the court held a statute giving to a board of education the "power to adopt by-laws fixing the salaries" meant the power to regulate. Nor may we ignore the fact that contemporaneous construction, as evidenced by the widespread adoption of salary schedules with a minimum and maximum limit thereof, supports a broader construction of the word "fix" than that which prosecutor presses the court to adopt.

Prosecutor also contends that ordinance No. 1517 is of no effect because the schedules prepared by the Civil Service Commission and made a part of the ordinance and filed with the town clerk coincident with its passage, were not published in a newspaper as required by *R. S.* 40:49–2. That precise question has been decided adversely to prosecutor's contention in *Chapman* v. *Edwards,* 124 *N. J. L.* 192, in which case the Supreme Court held that the omission to publish schedules prepared and submitted by the Civil Service Commission did not make nugatory an ordinance expressly designed to effectuate the Civil Service Law.

Prosecutor's final point is that because the Town of Irvington at a referendum in 1941 voted against a proposal to increase the pay of the fire and police departments, thereafter no increase of pay could legally be granted to the members of the aforesaid departments except by another referendum vote. This contention was held in *Corcoran* v. *West Hoboken,* 1 *N. J. Mis. R.* 24, to be without merit and we are bound by that holding.

For the reasons stated, the writ of *certiorari* is dismissed, with costs.