[No. B082024. Second Dist., Div. Six. May 31, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD WAYNE JENKINS, Defendant and Appellant.

COUNSEL

Dan Mrotek, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Robert Renner, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

YEGAN, J.—Donald Wayne Jenkins appeals from a trial court finding that he is a mentally disordered offender (MDO) within the meaning of Penal Code section 2962.[1] We affirm and reject appellant's argument that the MDO statutory scheme, as applied, violates the ex post facto clauses of the federal and state constitutions. We explain the differences between date of enactment, effective date and operative date and hold that the MDO statutes apply to persons convicted and imprisoned for certain crimes committed after the statutory scheme's effective date, January 1, 1986. (§ 2980.)

*Facts and Procedural History*

On February 21, 1986, appellant strangled Yolanda Gallagher to death. He was charged with murder, found incompetent to stand trial, and sent to Patton State Hospital. (§ 1370.01, subd. (a)(1).) In 1988 appellant regained his mental competency and pled guilty to voluntary manslaughter. The trial court sentenced him to state prison for 11 years.

Prior to his release from prison the Department of Corrections determined that appellant was an MDO and required treatment by the State Department of Mental Health. (§ 2962, subd. (d)(1).) Appellant refused to sign parole conditions placing him in the custody of the State Department of Mental Health. Parole was revoked and his release date was extended to June 24, 1993.

On June 15, 1993, appellant was reevaluated and again certified as an MDO. Appellant signed his parole conditions and was released to Atascadero State Hospital for treatment. He thereafter challenged the involuntary

---

[1]All statutory references are to the Penal Code unless otherwise stated.

commitment. (§ 2966, subd. (a).) On October 19, 1993, the Board of Prison Terms conducted a hearing and found that he met the MDO criteria set forth in section 2962.

Appellant filed a petition for a trial de novo and waived his right to a jury. (§ 2966, subd. (b).) Prior to trial, appellant moved to dismiss on the ground that the MDO statute, as applied to him, was ex post facto. The trial court denied the motion and, on substantial evidence, found that appellant was an MDO. This appeal followed.[2]

### Ex Post Facto Rule

"An *ex post facto law* is a retrospective statute applying to crimes committed before its enactment, and substantially injuring the accused. The Constitutions prohibit the passage of such laws (U.S. Const., Art. I, §§ 9, 10; Cal. Const., Art. I, § 9) . . . ." (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 419, p. 601.) If a crime is committed before the "effective date" of a statute and the statute retroactively increases the punishment for the crime or eliminates a defense, the statute violates the ex post facto clauses. (See also *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 298 [279 Cal.Rptr. 592, 807 P.2d 434]; *Collins* v. *Youngblood* (1990) 497 U.S. 37, 42 [111 L.Ed.2d 30, 38-39, 110 S.Ct. 2715].)

### Legislative History

The MDO statutes were enacted October 1, 1985, and became operative July 1, 1986. (Stats. 1985, ch. 1419, § 1, p. 5011.) The effective date of the statute, codified as section 2960, was January 1, 1986. Section 2960, subdivision (j) provided: "The amendments to this section made in the first year of the 1985-86 Regular Session apply to persons incarcerated before, as well as after, the effective date of those amendments." In 1986, the Legislature recodified the MDO statutory scheme to give it separate section numbers. (§§ 2962-2980; Stats. 1986, ch. 858, p. 2951.) Section 2980 then provided that "[t]his article applies to persons *incarcerated before, as well as after January 1, 1986.* (Italics added.)

In *People* v. *Gibson, supra,* 204 Cal.App.3d 1425, we held that the MDO statutory scheme was ex post facto as applied to Gibson. Gibson was convicted of forcible rape in 1983, sentenced to state prison, and became

---

[2]The appeal is technically moot because the one-year MDO commitment has expired. Appellant, however, is subject to recertification as an MDO. Because the issue presented is of recurring importance and is likely to evade appellate review due to the time constraints of the MDO commitment, we address the merits. (*People* v. *Gibson* (1988) 204 Cal.App.3d 1425, 1429 [252 Cal.Rptr. 56].)

eligible for parole in 1986. Instead of being released, he was certified as an MDO and required to accept inpatient treatment through the State Department of Mental Health. We concluded that ". . . the retroactive application of the MDO provisions to persons whose crimes were committed prior to their *effective date* violates the ex post facto clauses of the United States and California Constitutions because the provisions: (1) are applicable only to persons who were convicted for certain crimes and *who are still serving their terms of imprisonment on the operative date of the legislation* (§ 2962). . . ." (*Id.*, at pp. 1434-1435, italics added.)

In 1989 the Legislature passed an urgency measure in response to *People v. Gibson.* It declared: "This act is ·an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. . . . [¶] . . . In order to keep the mentally disordered offender program in effect for those persons who committed their crimes on or after January 1, 1986, it is necessary that this act take effect immediately." (Stats. 1989, ch. 228, § 8, p. 1258.) Section 2980 was amended to provide that "[t]his article applies to persons who committed their crimes on and after January 1, 1986." (Stats. 1989, ch. 228, § 5, p. 1256.)

### Enactment Date, Effective Date, and Operative Date

Appellant claims that the MDO statutory scheme, as applied, is ex post facto because he committed the homicide before the statute's operative date, July 1, 1986. The argument is without merit.

"Under the California Constitution, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment except where the statute is passed as an urgency measure and becomes effective sooner. [Citation.] In the usual situation, the 'effective' and 'operative' dates are one and the same, and with regard to ex post facto restrictions, a statute has no force and effect until such effective-operative date. [Citation.]" (*People v. Henderson* (1980) 107 Cal.App.3d 475, 488 [166 Cal.Rptr. 20].)

In some instances, the Legislature may provide for different effective and operative dates. (*Cline v. Lewis* (1917) 175 Cal. 315, 318 [165 P. 915]; 57 Ops.Cal.Atty.Gen. 451, 454 (1974).) "[T]he operative date is the date upon which the directives of the statute may be actually implemented. The effective date, then, is considered that date upon which the statute came into being as an existing law." (*People v. McCaskey* (1985) 170 Cal.App.3d 411,

416 [216 Cal.Rptr. 54]; see also *People* v. *Righthouse* (1937) 10 Cal.2d 86, 88 [72 P.2d 867].)

As indicated, the MDO statutes were enacted in 1985 and became effective January 1, 1986. Although the statutory scheme had a July 1, 1986, operative date for purposes of MDO commitments, it applied to persons who committed certain crimes on or after January 1, 1986, and later imprisoned therefore.

As previously indicated, in *People* v. *Gibson, supra,* 204 Cal.App.3d 1425, we held that the Legislature could not retroactively extend the MDO statutory scheme to crimes committed before its enactment. The first sentence of the opinion stated that the MDO legislation was "effective July 1, 1986." (*Id.,* at p. 1429.) Because Gibson's offense was committed in 1983, the distinctions between enactment date, effective date, and operative date were not determinative. We did, however, conclude that section 2980, which applied to persons incarcerated before January 1, 1986, was ex post facto because "[i]t is . . . expressly retroactive to persons whose crimes . . . were committed *prior to the enactment* of the Legislature so long as they had not earlier been released on parole. [Fn. omitted.]" (204 Cal.App.3d at p. 1430, italics added.) Our use of the terms "enactment" and "effective date" was imprecise.

Here, appellant committed the offense more than a month after the effective date of the MDO statutory scheme. The trial court correctly found that the MDO statutory scheme, as enacted and presently amended, did not violate the ex post facto clauses of the United States and California Constitutions.

*Legislative Intent*

Appellant's reliance on *People* v. *McCaskey, supra,* 170 Cal.App.3d 411 (amendment of Gov. Code, § 13967 restitution statute) and *People* v. *Palomar* (1985) 171 Cal.App.3d 131 [214 Cal.Rptr. 785] (enactment of § 1202.4 restitution statute) does not compel a different result. There the defendants committed the offenses after the enactment of the legislation but before the operative date. The Legislature, in delaying the operative date of the statute, provided that the operative clause would apply to all aspects of the statute. "The Legislature may specify the legal effects to be attached to the operative clause. For example, it may specify that a statute will become operative upon the occurrence of a contingency [citation] or it may specify that some *part* of a statute will become operative at a date after the date the statute takes

effect. [Citation.]" (*People* v. *Palomar, supra,* 171 Cal.App.3d at p. 135, fn. 5.)

Not so here. The Legislature provided that the MDO statutory scheme applied to prisoners already incarcerated and new prisoners committing certain crimes before the July 1, 1986, operative date. Section 2960, as enacted in 1985, stated in pertinent part: "(a) The Legislature finds that there are prisoners who have a treatable, severe mental disorder which caused, was one of the causes of, or was an aggravating factor in the commission of the crime for which they were incarcerated. Secondly, the Legislature finds that if the severe mental disorders of those prisoners are not in remission or cannot be kept in remission at the time of their parole or upon termination of parole, there is a danger to society, and the state has a compelling interest in protecting the public. Thirdly, the Legislature finds that in order to protect the public from those persons it is necessary to provide mental health treatment until the severe mental disorder which was one of the causes of or was an aggravating factor in the person's prior criminal behavior is in remission and can be kept in remission. [¶] The Legislature further finds and declares the Department of Corrections should evaluate each prisoner for severe mental disorders during the first year of the prisoner's sentence, and that severely mentally disordered prisoners should be provided with an appropriate level of mental health treatment while in prison and when returned to the community." (Stats. 1985, ch. 1419, § 1.)

In determining the legal effect to be given an enactment that contains different effective and operative dates, the court must ascertain and promote the legislative intent of the enactment. (*Johnston* v. *Alexis* (1984) 153 Cal.App.3d 33, 41 [199 Cal.Rptr. 909].) The legislative findings, original enactment, and subsequent amendments demonstrate that the MDO statutory scheme was intended to apply to persons imprisoned for certain crimes committed on or after January 1, 1986.

"[I]t is our duty to uphold [the] statute unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity. [Citations.]" (*Mills* v. *Superior Court* (1986) 42 Cal.3d 951, 957 [232 Cal.Rptr. 141, 728 P.2d 211].) To be an ex post facto law, the enactment must be retrospective, that is, it must apply to events occurring before its existence and cause the defendant disadvantage. (*Weaver* v. *Graham* (1981) 450 U.S. 24, 28-29 [67 L.Ed.2d 17, 23, 101 S.Ct. 960].) We conclude that the MDO statutory scheme, as enacted and presently amended, is not an ex post facto for an offense committed on February 21, 1986.

The judgment is affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 23, 1995.